UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CRYSTAL CRITTENDON, *et al.*, | |
| | CIVIL ACTION FILE NO. |
| Plaintiffs, | 1:18-cv-02185-ELR |
| v. | |
| INTERNATIONAL FOLLIES, INC., *et al.*, | |
| Defendants. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiffs in the above-styled matter, and hereby files their Response to the Motion for Summary Judgment filed by the Defendants under Fed. R. Civ. P. 56 and Local Rule 56.1, as follows:

## I.   INTRODUCTION

Defendants' Motion for Summary Judgment should be denied in this FLSA case. Contrary to Defendants' assertions, Plaintiffs have not been paid the minimum wage for all hours worked each workweek. Almost every night shift, Plaintiffs worked "off-the-clock" at least thirty (30) minutes without being paid any wages. In addition, Defendants required that Plaintiffs contribute to an unlawful tip pool that was shared with management and their supervisors, and

other employees who were not regularly and customarily tipped. Also, Plaintiffs were required to pay various fees to work, for such items as permits, "covers," referral fees, parking fees costs of hair and make-up for stage performance, which caused their wages to drop below the minimum wage, and required them to use their tips from customers for unlawful purposes. For all of these reasons, the motion should be denied.

## II.   FACTUAL BACKGROUND[1]

Plaintiffs were employed by International Follies, Inc., d/b/a "the Cheetah" ("Cheetah") as entertainers at various times beginning in April 2016 through the present.[2] Jack Braglia ("Braglia") is an owner of Cheetah and exercised operational control over Cheetah. Braglia is a joint employer under the FLSA.  After April 9, 2016, Cheetah treated Plaintiffs as "tipped" employees and paid them a tip wage of $2.13 per hour for time entered in Cheetah's computerized record keeping system. However, Cheetah did not change other long standing policies that entertainers had repeatedly challenged as unlawful, such as failure to pay for time spent complying

---

[1]  Plaintiffs rely on their response to Defendants' Statement of Facts to Which No Genuine Issue Remains to be Tried, and Plaintiffs Statement of Additonal Facts which create a Genuine Issue to be tried.

[2]  Plaintiffs' claims before April 9, 2016, were previously settled and approved by this Court.

with Cheetah's "waiting policies" and the various fees entertainers were required to pay to work at Cheetah, which effectively eviscerated any wages required to be paid to Plaintiffs under the FLSA. In sum, Cheetah continued practices and policies that violated the FLSA, by not paying Plaintiffs the minimum wage for all hours worked each workweek, forcing entertainers to participate in an unlawful tip pool, and requiring them to pay various fees constituting unlawful deductions and "kick-backs" under the FLSA.

### A.    The Unpaid Wages For Work "Off-The-Clock"

Plaintiffs worked night shift. They were paid for all hours entered into the computer but were not paid for the time they waited after "clocking-out" each night shift, complying with Cheetah's "waiting policy".[3] Plaintiffs typically waited at least 30 minutes each night shift for the premises and parking lot to clear before they were permitted to leave. Sometimes Plaintiffs waited as long as 1.5 hours. Plaintiffs were not paid for the time they waited. The waiting caused their wages to

---

[3] Cheetah required all of the entertainers to wait at the end of the shift for the parking lot to clear before any of the entertainers were permitted to leave the premises. (Landwerth Depo – 10-3-17, 61:19-62:2; 62:24)(Blanding Dec., para. 3, Crittendon Dec., para. 3; Daye Dec., para. 3; East Dec., para. 3; Gates Dec., para. 3; Gibbs-Arnold Dec., para. 3; Hayes Dec., para. 3; Loper Dec., para. 3; Hilliard Dec., para. 3; Lowe Dec., para. 3; Ross Dec., para. 3; Thomas Dec., para. 3; Williams Dec., para. 3).

drop below the minimum wage during each workweek they were required to wait.[4]

**B.    The Unlawful Tip Pool**

Cheetah required each entertainer to contribute 10% of their tips each shift to a tip pool. During the night shift, the tip pool was shared with the night manager, the housemoms, the floormen and the disc jockey. During day shift, the tip pool was shared with the day manager and the disc jockey. The night manager, day manager and housemoms supervised entertainers, and were not eligible to participate in a tip pool under the FLSA. Moreover, Although Defendants have presented evidence that the night manager, day manager, housemoms, floormen and the disc jockey received tips at times, Defendants have not shown that the night manager, day manager, housemoms, floormen and the disc jockey were customarily and regularly tipped at least $30 per month and were "tipped employees" of Defendants.

**C.    The Unlawful Deductions: Permits**

Cheetah required all of their entertainers to obtain and pay the costs of an annual permit. Cheetah required their entertainers to have a permit to work at Cheetah.[5] Cheetah also required each entertainer to pay the costs of the permit.

---

[4]  The shifts during which they waited can be determined by Cheetah's computerized time records.

[5]  Each entertainer agreement contains the following language regarding Cheetah's

(Braglia Depo – 07-25-17, 62:16). The permit cost $270 to initially purchase and $250 to renew. Plaintiffs paid the $250 fee to renew permits during various workweeks in 2016 – 2018. Each time they purchased the permit their wages dropped below the minimum wage for that workweek. In addition, they were forced to use their tips to pay for the permits.

**D.    Unlawful Deductions: "Cover" Policy**

Plaintiffs were required to arrange for and pay another entertainer (referred to as a "cover") to work for them if they could not work a scheduled shift. Because entertainers don't typically "cover" for another entertainer without being paid, the policy resulted in the entertainers having to pay a "cover" fee to comply with the policy. Cheetah's "cover policy" reads:

> **Failure to Report to Work.** All employees are required to report for work according to their assigned schedules. If for any reason an employee cannot report to work, the employee must notify a manager or Housemom and make arrangements for a substitute to cover her shift.

---

permit policy:

All employees must have a work permit issued by the City of Atlanta Bureau of Police Services Permits Department. The work permit must be renewed yearly. No employee will be permitted to work without a valid, current permit.

(Ex. 1, International Follies, Inc. Entertainer Employee Policies, p. 3.). "Every person who works at Cheetah has to purchase [a] permit." (Braglia Depo – 07-25-17, 63:3).

Not reporting to work as scheduled or failing to cover a shift will result in
    disciplinary action.

(hereafter "Cover Policy")(Ex. 1, International Follies, Inc. Entertainer Employee
Policies, p. 1.). An entertainer generally would not "cover" for another entertainer
without being paid at least $40. Plaintiffs paid at least $40 for other entertainers to
"cover" their shifts. Plaintiffs wages dropped below the minimum wage each week
they paid a cover. Moreover, the cover was paid out of their tips.

### E.    Unlawful Deductions: Parking Policies

Cheetah required its entertainers who drove to work to park in the Cheetah lot
on the premises and pay a minimum parking fee of $3 per shift. Plaintiffs drove to
work at least once a week and paid the parking fee at least once a week. Because
they were only paid $2.13 per hour, the parking fee caused their wages to drop below
the minimum wage each week. They also paid the parking fee out of their tips.

### E.    Unlawful Deductions: "Appearance" Policies

Cheetah dancers are required to perform on stage under the lights. Cheetah
required its entertainers to have the hair and make-up done according to professional
standards. Cheetah provided make-up artists and hair stylists for dancers to comply
with its standards. Plaintiffs incurred various fees at Cheetah (on-the-clock) to have
their make-up applied and hair styled to comply with Cheetah's strict standards. The

costs of complying with Cheetah's strict standards caused their wages to drop below the minimum wage each week. They also paid these costs out of her tips.

### E.      Unlawful Deductions: VIP Referral Fees

Cheetah floormen and the night manager referred VIP customers to entertainers and charged them for the referral. Plaintiffs paid between 10% and 20% of the tips they received form the customer who was referred for these referrals. The floormen and night manager would not refer customers to Plaintiffs without payment of the referral fee.  The referral fees caused Plaintiffs wages to drop below the minimum wage each week. They also paid the referral fee in cash out of the tips earned that shift to their manager and floormen.

### E.      Unlawful Deductions: Housemom Fees

Plaintiffs typically paid housemoms at least $10 each shift in addition to the fee the housemoms received from the entertainer tip pool. The housmoms supervised Plaintiffs. The tips to the housemoms caused Plaintiffs wages to drop below the minimum wage each week. They also paid the tip from their tips earned that shift.

## III.    ARGUMENT AND CITATION TO AUTHORITY[6]

---

[6] The Rule 56 Standards are well known to this Court: Summary judgment must be denied unless there are no genuine disputes of material fact and "the facts and inferences point overwhelmingly in favor of [defendants], such that reasonable people could not arrive at a contrary verdict." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); Fed. R. Civ. P. 56. The Court must view the

### A. The Time Mays Waited At Work Is Compensable Under the FLSA.

The FLSA "requires employers to pay their employees for all time spent working on their behalf." *Smith v. Aztec Well Serv. Co.,* 462 F.3d 1274, 1285 (10th Cir. 2006) (citing *United Transp. Union Local* 1745 *v. City of Albuquerque*, 178 F.3d 1109, 1116 (10th Cir. 1999) (citing 29 U.S.C. §§ 206m 207). Congress has never defined the term "work," however, and the "courts are thus left to determine on a case-by-case basis whether an employee's activities are compensable under the FLSA." *Id.* (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S. Ct.514, 518-19(2005)).

From the inception of the FLSA, Supreme Court decisions broadly defined both "work" and "workweek." *Alvarez*, 126 S. Ct. at 519. The *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), the Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Two years later, in *Anderson v. Mt. Clemens*

---

evidence in the light most favorable to the Plaintiff, "and all justifiable inferences are to be drawn" in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court "must disregard all evidence favorable to [defendant] that the jury is not **required to believe**." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000) (emphasis added)

*Pottery Co.*, 328 U.S. 680, 690-91 (1946), the Court defined "workweek" for purposes of the FLSA to "include **all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace**." (emphasis added).

In 1947, one year after the Supreme Court's decision in *Anderson*, Congress passed the Portal-to-Portal Act, 29 U.S.C. § 245, which "amended the FLSA to shield employers from 'judicial interpretations of the FLSA [that] had superseded long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities.'" *Smith*, 462 F.3d at 1286 (quoting *Alvarez*, 126 S. Ct. at 519). The Portal-to-Poral Act which, like the original FLSA, omits any definition of "work," *Alvarez*, 126 S. Ct. at 519.

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended,… on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee… -
> (1)   walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> (2)   activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Smith*, 462 F.3d at 1286 (quoting 29 U.S.C. § 254(a)). Employers "are therefore not

required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities at work." *Id.* Other than these express exceptions, the Portal-to- Portal Act "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *Alvarez*, 126 S. Ct. at 520. Pursuant to the "continuous workday rule," the term "workday" is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." *Id.* at 521. Several years after the enactment of the Portal-to-Portal Act, the Supreme Court found that Congress passed the Act "still intending for an employee's activities to fall 'within the protection of the [Fair Labor Standards] Act if they are an integral part of and are essential to the principal activities of the employees.'" *Smith*, 462 F.3d at 1287 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956)). The Supreme Court "therefore held 'that activities performed either before or after the regular work shift … are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed.'" *Id.* (quoting *Steiner*, 350 U.S. at 256). The Supreme Court "recently clarified this rule in *Alvarez*, explaining 'that any activity that is "integral and indispensable" to a

"principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act,' and is thus compensable under the FLSA." *Id.* (quoting *Alvarez*, 126, S. Ct. at 525).

Plaintiffs wait time is compensable under the FLSA. Plaintiffs unquestionably were required to "be on the employer's premises, on duty or at a prescribed workplace [the Cheetah]," until Cheetah cleared them to leave.[7] While waiting, they were not free to leave or engage in any other meaningful activity. Moreover, the time spent waiting was not *de minimus*. The unpaid time was substantial, and Cheetah could easily have tracked the time Cheetah dancers were released to go home since they were all cleared to leave at the same time. For these reasons, the post shift waiting for the parking lot to clear is work time within the meaning of the FLSA and is integral and indispensable to the work they performed for Defendants, rendering those activities "principal activities" sufficient to commence and complete the continuous workday. *See Alvarez,* 126 S. Ct. at 525.[8]

---

[7] The USDOL Fact Sheet No. 22 defines the workweek as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." The USDOL recognizes that "the workday may therefore be longer than the employee's scheduled shift, hours, tour of duty, or production time."

[8] The fact that the waiting occurred at the end of the shift does not mean its not worktime. If Cheetah had "clocked out" entertainers during slow periods, during shifts, and required them to wait on the premises for thirty minutes without pay, the time would most certainly be considered compensable time under the FLSA.

**B.      In Forcing Entertainers to Share Tips with Management
Cheetah Operates an Illegal Tip-Pool.**

The FLSA allows employers to pay less than minimum wage to employees
who receive tips. 26 U.S.C. § 203(m). The mechanism it creates to allow
employers to pay less than minimum wage is the "tip credit." The tip credit allows
employers to include in its calculation of a "tipped employee[s]" wage the amount
that an employee receives in tips up to $5.12 an hour. 29 U.S.C. § 203(m). Under
the FLSA, the tip credit is invalidated, and must be refunded retroactively to
Plaintiff, if Defendants required Plaintiff to share any portion of his tips with his
"employer." *Myers v. The Copper Cellar Corp.,* 192 F.3d 546, 550-5 (participation
of kitchen workers in tip pool entitled other servers to refund the tip credit). The
FLSA's definition of "employer" is extremely broad and includes, in addition to
business owners, "any person acting directly or indirectly in the interest of an
employer in relation to an employee . . . " 29 U.S.C. §203(d). Thus, Defendants
violated the FLSA if they took tips *or* if they required Plaintiff to share her tips
with Defendant's agents, *i.e.*, those acting in Defendants' interest in relation to
Plaintiff.

In drawing a line between true employees and those who are FLSA
employers/agents, courts have focused on whether the challenged employee: a) was

involved in the hiring, firing or disciplinary processes; b) had control/supervisory responsibility over employees; and/or c) was involved in determining employee pay. *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802 (E.D. Ark. 1990). Once a particular employee is deemed to be the owner's agent, that individual is expressly prohibited from participating in a tip pool. *Id.* There is no exception to this rule – in the statute, in the case law or otherwise – for an agent who also provides some level of customer service. *Wajcman v. Inv. Corp. of Palm Beach*, 2008 WL 783741, *3 n. 1 (S.D. Fla. 2008) ("[T]he practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping."). Moreover, an employer

> may not keep tips received by its employer for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203(m)(2)(B).

Here, the night manager, day manager and housemoms were clearly involved in the hiring, firing or discipline of Cheetah's entertainers, had control/supervisory responsibility over entertainers; and/or were involved in decisions affecting the pay of Cheetah's entertainers. Because Johnson, Kim and the housemoms kept a "portion of [Plaintiffs'] tips" they clearly violated 29 U.S.C. § 203(m)(2)(B).

Accordingly, the tip pool was invalid, and Cheetah is not entitled to a tip credit for the difference between the hourly wage of $2.13 per hour and the minimum wage of $7.25 per hour, and the amount of the tips unlawfully kept. See 29 U.S.C. § 216. For this reason, summary judgment should be denied.

**C.      Defendants Have Not Demonstrated That the Night Manager, Day Manager, Floormen, Housemoms and Disc Jockey Customarily and Regularly Receive More Than $30 Per Month in Tips.**

Under the FLSA, a tip pool can only be shared with employees who customarily and regularly receive at least $30 per month in tips. Defendants have not demonstrated that Johnson, Kim, and all of the floormen, housemoms and disc jockeys with whom Plaintiffs shared her tips customarily and regularly receive at least $30 per month in tips.

**D.      The Fees Paid By Plaintiffs Are Unlawful Deductions From Wages.**

Plaintiffs incurred fees for permits, parking, "covers", hair stylists, housemoms, make-up artists and VIP referrals that caused their wages to drop below the minimum wage. Under the FLSA, wages must be paid "finally and unconditionally" or "free and clear" of any direct or indirect "kickbacks." 29 C.F.R. § 531.35 states:

> [w]hether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage

requirements of the Act will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick back' is made in cash or in any way other than cash. . . . . [T]here would be a violation of the Act in any work week when the cost  . . . by the employee cuts into the minimum or overtime wage required to be paid . . . under the Act.

The minimum wage must be received "free and clear" of any improper deduction. *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1241 (11th Cir. 2002. "[R]equiring employees to pay for expenses incurred for the benefit of the employer functions as a *de facto* wage deduction." *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1315 (N.D.Ga. 2008). In fact, there is "no difference between deducting an expense and failing to reimburse an expense." *Id*.

Here, the various fees are either kicked-back to the employer of for the employers benefit. Accordingly, the fees are recoverable as part of a FLSA wage claim to the extent they reduce the employee's wage below the minimum or overtime rate. *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D.Tex. 1995); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 330 (5th Cir. 1993); *Hart v. Rick's Cabaret International, Inc.*, 60 F.Supp.3d 447, 477 (S.D.N.Y. 2014).  The Debtor's "practice of collecting a tip out fee . . . violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." *Reich*, 890 F. Supp. at 595. "[T]o fully compensate the entertainers in the amounts required by the FLSA,

[the club] must pay them the full minimum wage for all time worked during the limitations period. In addition, the club must return all tip out fees collected from the entertainers." *Id*. "[T]he Court agrees with Plaintiffs that 'the method of calculating Defendants' back wage liability at trial should be (1) $7.25 per hour worked, plus (2) all [house fees] paid by Plaintiffs to Defendants. . . ." *Roger Wilson v. 1400 Northside Drive, Inc.*, Civil Action No. 1:15-CV-4453-SCJ, * 21 (N.D.Ga. June 15, 2017).

Moreover, an FLSA violation may result from any "arrangement that 'tend[s] to shift part of the employer's business expense to the employees . . . to the extent that it reduce[s] an employee's wage below the statutory minimum." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (quoting *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972). "The FLSA does not permit an employer 'to transfer to its employees the responsibility for the expenses of carrying on an enterprise.'"[9] *Dean*, 224 F. Supp. 3d at 1327. Fees paid to the employer and its employees are unlawful kick-backs under 29 C.F.R. § 531.35 because they "tend to shift part of the employer's business expense to the

---

[9] The covers benefit Cheetah because it shifts the burden of staffing to its employees. The requirement that entertainers pay for the permits, obviously benefits Cheetah because Cheetah avoids the cost of paying for the permit. The referral and housemom fees act as a subsidy to Cheetah's floormen, managers, housemoms and shift part of the labor cost to the entertainers.

employees" *Hurst v. WBY, Inc.*, Civil Action No. 1:15-CV-3560-MLB, * 167 at 14 (N.D.Ga. Dec. 26, 2019)(Arrangement benefited Defendants because "Defendants had to pay the DJ and house mom less because they were being tipped by entertainers"). Fees paid by an employee benefit the club where they work because they "made [the club] a more lucrative, and, thus attractive, place for the support staff to work." *Smith et al. v. WBY, Inc.*, Civil Action No. 1:16-CV-4017-MLB, *33 at 8 (N.D.Ga. Nov. 19, 2019).

The undisputed evidence shows that Plaintiffs paid one or more of the following fees which benefited Cheetah:

- a "cover" of at least $40 per shift for each workweek in which they missed a scheduled shift;

- an annual permit of at least $250;

- parking fees of at least $3 per shift for every shift they drove;

- hair and make-up fees on a weekly basis;

- a 10% - 20% VIP referral fee; and

- a housemom tip-out of at least $10 per shift.

Each workweek such an expense was incurred, Plaintiffs wages dropped below the minimum wage.

> ### E.    Defendants Used Plaintiffs Tips For Purposes Other Than A Valid Tip Pool And The Tip Credit.

Tips are the property of an employee. An employer may use the tips for only two purposes: (1) the tip credit; and (2) a valid tip pool. 29 U.S.C. § 203(m)(2)(A)(ii); 29 U.S.C. § 203(m)(B). Plaintiffs tips were used for other purposes, including to pay fees for permits, parking, "covers", hair stylists, housemoms, make-up artists and VIP referrals.

**F.     Plaintiffs' Request An Extension Of Time To Respond To Defendants Arguments That They Have Not Acted Willfully Under Fed. R. Civ. P. 56(d) and The Court's Power To Grant Extensions.**

Defendants seek summary judgment on the issue of Defendants' "willfulness" under the FLSA. A willful violation occurs when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Mclaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 108 S.Ct. 1677 (1988). Reckless disregard means "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. An employer acts with reckless disregard "if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3).

Plaintiffs attempted to engage in discovery to ascertain Defendants efforts to comply with the FLSA, relating to hours worked, the tip pool, the tip credit, covers,

permits, VIP referral fees, parking, tip-outs and the other matters at issue in this case. Plaintiffs served third party subpoenas on Ford & Harrison, LLP, Bennet Alsher, Esq., Frederick Warren, Esq., Schulten Ward Turner & Weiss, LLP and Andrea Pawlak, Esq. to ascertain Defendants efforts to inquire into these matters, and the advice given. Defendants and the third parties have objected to producing the information on grounds of the attorney-client privilege and the work product doctrine. (see Defendants Motion to Quash, Dkt. 54). Plaintiffs moved this Court to compel the third party subpoenas. (see Plaintiffs' Motion to Compel, Dkt. 57). Plaintiffs also requested an extension in the Motion to Compel to engage in the discovery, and filed a motion for extension of discovery on the same grounds (Plaintiffs' Motion for Extension, Dkt. 60). All the motions are pending.

Plaintiffs cannot sufficiently respond to Defendants' allegations that it has not acted willfully, until they are permitted to engage in discovery regarding Defendants' efforts to comply with the FLSA. (Dudley Declaration). Accordingly, Plaintiffs request a deferment or extension of time to respond until (i) the Court rules on the relvant motions; and (ii) Plaintiffs are permitted to engage in the pertinent discovery. Fed. R. Civ. P. 56(d) provides a mechanism for the Court to defer a ruling on summary judgment or grant the non-movant an extension to respond to summary judgment if the non-movant cannot present facts justifying opposition to the motion.

Plaintiffs submit that an extension or deferment is appropriate because Plaintiffs have attempted to obtain information through discovery to determine Defendants efforts to inquire into the legality of its FLSA policies regarding hours worked, the tip pool, the tip credit, covers, permits, VIP referral fees, parking, tip-outs and the other matters at issue in this case. Defendants objected to Plaintiffs' discovery regarding these matters. Plaintiffs request an extension or deferment on the briefing of the "willfulness" issue until the Court resolves these motions, and Plaintiffs are given an opportunity to conduct adequate discovery regarding the "willfulness" issue.

## IV. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment must be denied

This 23rd day of January, 2020.

**DUDLEY LAW, LLC**

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley
Ga. Bar No. 231745
Attorney for Plaintiff

4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA  30327
Tel.: 404.687.8205
Fax: 404.237.2150

adudleylaw@gmail.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that the foregoing has been prepared using Times New Roman 14 point font, and that I have this date served a copy of the foregoing on opposing counsel by email and by electronically filing same with the Clerk of the Court, United States District Court, Northern District of Georgia.

Kevin L. Ward
Dean R. Fuchs
Andrea L. Pawlak
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street NW, Suite 2700
Atlanta, GA 30303
k.ward@swtwlaw.com
d.fuchs@swtwlaw.com
a.pawlak@swtwlaw.com

This 23rd day of January, 2020.

**DUDLEY LAW, LLC**

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley
Ga. Bar No. 231745
Attorney for Plaintiff

4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA  30327
Tel.: 404.687.8205
Fax: 404.237.2150
adudleylaw@gmail.com