**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CRYSTAL CRITTENDON, et al.,      *
                                         *

        Plaintiffs,         *
                                         *

        v.               *      1:18-CV-02185-ELR
                                       *

INTERNATIONAL FOLLIES, INC.,    *
*d/b/a* CHEETAH, et al.,          *
                                       *

        Defendants.       *
                                       *

———————

**O R D E R**

———————

There are several matters pending before the Court.  The Court's rulings and conclusions are set out below.

**I.**    **Factual Background[1]**

This case involves Plaintiffs Crystal Crittendon, Shaleah Daye, Riana East; Cassidy Gates, Jovana Gibbs-Arnold, Ashley Hayes, Marriah Hilliard,[2] Ashley Johnson, Tiffany Lowe, Jasmine Ross, Megan Thomas, Samantha Williams, Basia Loper, Tierra Blanding, and Rachelle Caliendo's claims against Defendants International Follies, Inc., d/b/a Cheetah ("The Cheetah"), and Jack Braglia for

---

[1] All facts noted herein are undisputed unless otherwise indicated.

[2] The Court observes that on the docket, Ms. Hilliard's name is spelled "Merriah Hillard," but in her consent to join [Doc. 9-1] her name is spelled "Marriah Hilliard."

alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.   Am. Compl. [Doc. 9].   Defendants operate an adult entertainment club located in Atlanta, Georgia, known as The Cheetah.   See Defs.' Statement of Material Facts ¶¶ 1–2 [Doc. 131-4] ("Defs.' SOMF").   Defendant Braglia is, and was at the time of Plaintiffs' employment, the general manager of The Cheetah.   See id. ¶ 2.   Plaintiffs are former employees of The Cheetah who worked as adult entertainers/dancers.   See id. ¶¶ 4–19.

According to Defendants' written tip policy, The Cheetah pays its adult entertainers the federal minimum wage of $7.25 per hour by paying a cash wage of $2.13 per hour and applying a tip credit of $5.12 per hour.   See id. ¶¶ 23, 32. Additionally, pursuant to the terms of the written tip policy, Plaintiffs contributed 10% of their total tips to floormen and disc jockeys as part of a tip-pooling arrangement.   See id. ¶ 32.   Defendants contend this was the only mandatory tip-sharing arrangement required by The Cheetah.   See id. ¶¶ 33–34.

However, Plaintiffs dispute Defendants' characterization of The Cheetah's tip policy and claim they were required to participate in an invalid tip pool.   See Pls.' Resp. to Defs.' Statement of Material Facts ¶¶ 32–34 ("Pls.' Resp. to Defs.' SOMF") [Doc. 161-1].   Specifically, Plaintiffs contend the tip pool was invalid because they had to share their tips with additional staff beyond those included in the written tip

policy, such as mangers and "house moms," who received a portion of each dancer's tips at the end of every shift.  See id. ¶¶ 32–34

Further, Plaintiffs assert they were required to pay additional uncompensated fees—"unlawful deductions"—which caused their wages to drop below minimum wage.  See Pls.' Statement of Additional Material Facts ¶¶ 5–36 [Doc. 161-2] ("Pls.' SOMF").  For example, Plaintiffs allege they had to pay for: (1) their own mandatory adult entertainment work permits (as required by the City of Atlanta),[3] (2) VIP referral fees to floormen, (3) a $3 parking fee every time they parked at the club, and (4) a "cover" fee to other dancers ($40 minimum, but on average $80 per shift) to "cover" their shifts when necessary.  See id. ¶¶ 5, 18, 26.  Plaintiffs also maintain that in order to comply with Defendants' strict dress code policy, they typically paid "$40 each shift to have their make-up and hair done[.]"  See id. ¶ 85.  Plaintiffs assert that they paid these costs and fees out of their tips and wages, and that these additional fees caused their wages to drop below the minimum wage.  See id.

Additionally, all dancers were subject to The Cheetah's "waiting policy," which required adult entertainers to engage in check-out procedures and wait until all customers had departed the premises before the dancers were permitted to leave. See Defs.' SOMF ¶¶ 91–92.  According to Plaintiffs, they typically waited at least

---

[3] The City of Atlanta requires adult entertainers to maintain a city-issued permit from the Atlanta Bureau of Police Services Permit Department.  See Defs.' SOMF ¶ 133.

thirty (30) minutes every time their shifts ended—time for which they were not compensated.  See Pls.' Resp. to Defs.' SOMF ¶¶ 91–92.

Based on these allegations, Plaintiffs accuse Defendants of violating the FLSA by failing to pay minimum wage, failing to pay overtime wages, taking "kickbacks" in the form of unlawful payments, and requiring Plaintiffs to participate in an invalid tip pool.  See generally Am. Compl.

However, Defendants deny any wrongdoing and seek summary judgment on all claims.  [Doc. 131].  First, Defendants stress that Plaintiffs' minimum wage and overtime wage claims are not recoverable because they concern non-compensable preliminary and postliminary activities.  [See id.]  Additionally, Defendants argue that The Cheetah's tip policy is valid and that none of Plaintiffs' claims for other payments are recoverable pursuant to the FLSA.  [See id.]  Finally, Defendants assert that even if the Court finds The Cheetah's tip policy violated the FLSA, they cannot be held liable because any such violation was not willful.  [See id.]

## II.    Procedural Background

On May 16, 2018, Plaintiffs filed their Complaint in this case.  See Compl. [Doc. 1].  Approximately a month later, on June 11, 2018, Plaintiffs filed their Amended Complaint.  See Am. Compl.  By their Amended Complaint, Plaintiffs bring three (3) counts against Defendants:   Count I—Minimum Wage Claim (Violation of 29 U.S.C. § 206); Count II—Overtime Wage Claim (Violation of 29

U.S.C. § 207); Count III—Unlawful Taking of Tips (Violation of 29 U.S.C. § 203).
See id.

On August 21, 2018, the Court stayed this matter pending resolution of a related case, Valente v. International Follies, Inc. d/b/a The Cheetah, No. 1:15-CV-02477-ELR.[4]   Ultimately, Valente I settled in June 2019, and the undersigned subsequently lifted the stay of discovery in this case on July 30, 2019.  [See Docs. 26, 27].

On November 17, 2020, Defendants filed their "Motion to Dismiss Plaintiff Rachelle Caliendo for Failure to Appear."  [Doc. 127].  Plaintiffs have not filed a response, and thus, Defendants' motion stands unopposed.  In addition, Defendants have filed their "Renewed Motion for Summary Judgment on Liability" [Doc. 131], which Plaintiffs oppose.   [Doc. 161].   Defendants have also filed "Defendants' Renewed Notice of Objection to Depositions Taken in Other Matters [Docs. 104 through 109]" [Doc. 164] and "Defendants' Renewed Notice of Objection to Plaintiffs' Declarations."  [Doc. 165].  By these objections, Defendants contend that in their response to Defendants' motion for summary judgment, Plaintiffs improperly rely on (1) their own declarations and (2) depositions taken in other

---

[4] There were two (2) lawsuits involving Plaintiff Alison Valente before the undersigned: (1) Valente, et al. v. International Follies, Inc. d/b/a The Cheetah, 1:15-cv-02477-ELR ("Valente I") which involved FLSA claims, and Valente v. International Follies, Inc. d/b/a The Cheetah, 1:16-cv-01138-ELR ("Valente II"), which involved claims for sexual harassment and discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2.

cases.  [See Docs. 164, 165].  Having been fully briefed, these matters are now ripe for the Court's review.

### III.    Motion to Dismiss Plaintiff Caliendo [Doc. 127]

The Court begins by addressing Defendants' "Motion to Dismiss Plaintiff Rachelle Caliendo for Failure to Appear."  [Doc. 127].  By their motion, Defendants request that the Court dismiss Plaintiff Caliendo from this lawsuit pursuant to Federal Rule of Civil Procedure 37(d) for her failure to attend her scheduled depositions.  See id.; see also FED. R. CIV. P. 37(d)(1)(A) (authorizing a court to order sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition").

As background, on November 7, 2019, Ms. Caliendo failed to appear for her properly scheduled deposition.  [See Docs. 127-3, 127-4].  Thereafter, Plaintiffs' counsel informed Defendants that Plaintiffs had been unable to locate or contact Ms. Caliendo.  [See Doc. 127-4].  Thus, on December 5, 2019, Defendants filed a Discovery Dispute Statement regarding Ms. Caliendo's failure to appear at her scheduled deposition. [Doc. 58].  In their Discovery Dispute Statement, Defendants requested that Ms. Caliendo's remaining claims be dismissed.  [See id.]

However, by its September 30, 2020 Order, the Court denied Defendants' requested relief and instead provided Ms. Caliendo with "one (1) more opportunity

to attend a future scheduled deposition." [See Doc. 125 at 16].  In the September 30, 2020 Order, the Court warned Ms. Caliendo that if she failed to appear for any future scheduled deposition, the undersigned would consider imposing sanctions against her, including dismissal of her claims.  [See id.]

Subsequently, the Parties proceeded to reschedule Ms. Caliendo's deposition. [See Docs. 127-5, 127-6].  Although Plaintiffs' counsel had still not been able to reach or communicate with Ms. Caliendo, Defendants served and filed their Second Notice of Deposition of Plaintiff Rachelle Caliendo on October 30, 2020, and set her deposition for Friday, November 13, 2020.  [See Doc. 126].  Ms. Caliendo and her counsel failed to appear for the noticed deposition.  [See Doc. 127-8].  According to Defendants, they have not received any further communication from Ms. Caliendo's counsel regarding this matter.  [See Docs. 127 at 5; 127-7; 127-8].

Thus, Defendants now request that the Court dismiss Ms. Caliendo from this action.  [See Doc. 127 at 5.]  Additionally, Defendants request "an award of their attorney fees and expenses incurred regarding Ms. Caliendo's failure to appear for both depositions." [See id.]

Upon consideration, the Court finds that dismissal is an appropriate sanction for Ms. Caliendo's failure to appear for her noticed depositions.  See FED. R. CIV. P. 37(d)(3); see also LR 41.3, NDGa (dismissal authorized where plaintiff or plaintiff's counsel has failed or refused to obey a lawful order of the court).  Accordingly, the

Court grants Defendants' motion and dismisses Rachelle Caliendo from this case. Further, the Court grants Defendants' request for their reasonable expenses, including attorneys' fees, that they incurred due to Ms. Caliendo's failures to appear.  See FED. R. CIV. P. 37(d)(3) ("Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

## IV.    Defendants' Objection to Depositions Used in Prior Matters [Doc. 164]

The Court now addresses Defendants' objections in turn, beginning with "Defendants' Renewed Notice of Objection to Depositions Taken in Other Matters [Docs. 104 through 109]."[5] [Doc. 164].  By their first objection, Defendants seek to strike deposition testimony of Jack Braglia, Robert ("Bob") Johnson, Samantha Kim, Vanessa Landwerth, and Holly Wood taken in prior cases (Valente I and Valente II, together "the Valente Lawsuits") that Plaintiffs proffer as evidence in opposition to Defendants' motion for summary judgment.   [See id.; see also

---

[5] The Court notes that in Mays v. Washington, Defendants also filed two (2) similar objections to those they submit here.  See 1:19-CV-01152-ELR, [Docs. 68, 69].  However, in Mays, Plaintiff did not respond to Defendants' objections.  Thus, pursuant to the Local Rules, the undersigned treated Defendants' objections in Mays as unopposed, did not consider certain paragraphs from Plaintiff's declaration, and did not consider the objected-to depositions in resolving Defendants' motion for summary judgment.  See LR 7.1(B), NDGa. ("Failure to file a response shall indicate that there is no opposition[.]").  However, in the present matter, Plaintiffs have filed responses opposing Defendants' objections.  [See Docs. 177, 178].  Thus, the Court addresses the merits of the Parties' arguments regarding Defendants' objections.

Doc. 161].  Defendants assert that Plaintiffs' reliance on the deposition testimony from the Valente Lawsuits is improper and that these depositions constitute inadmissible hearsay.  [See Doc. 164] (citing FED. R. CIV. P. 32).

Contrary to Defendants' objection, the Court finds the prior depositions at issue are admissible pursuant to Federal Rule of Civil Procedure 32(a)(8).  Rule 32(a)(8) provides that a party may use prior deposition testimony if such testimony involves "the same subject matter between the same parties, or their representatives or successors in interest[.]"  See FED. R. CIV. P. 32(a)(8).  Additionally, "[a] deposition previously taken may also be used as allowed by the Federal Rules of Evidence."  See id.

In the matter at hand, the Parties dispute the "same subject matter" and "same parties" requirements of Rule 32(a)(8).  [See generally Docs. 164, 177, 180]. Specifically, Defendants contend that the Valente Lawsuits involve different claims and different Parties; thus, Plaintiffs may not use "the deposition of non-parties in the Valente Lawsuits against Defendants in this matter[.]"  [See Doc. 164 at 3].  In response, Plaintiffs contend that Eleventh Circuit generally treats depositions taken in other matters as admissible.  [See Doc. 177 at 2–3] (citing Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 751 (11th Cir. 2002)).

The Court agrees with Plaintiffs and finds that the proffered deposition testimony is admissible pursuant to Federal Rule of Civil Procedure 32(a)(8).  The

latter provision of Rule 32(a)(8) permits "a deposition previously taken" to "be used as allowed by the Federal Rules of Evidence." See FED. R. CIV. P. 32(a)(8). Federal Rule of Evidence 801(d)(2) provides that an admission by a party opponent is not hearsay, including statements "offered against an opposing party. . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed." See FED. R. EVID. 801(d)(2)(D).

Thus, pursuant to Rule 801(d)(2)(D), the depositions of Braglia, Johnson, Kim, Landwerth, and Wood are admissible as admissions by a party opponent. See id. At the time the depositions took place, these individuals were all employed by The Cheetah and gave testimony against an opposing party on "matter[s] within the scope of that relationship[.]" See id.

Accordingly, the prior deposition testimony at issue is not hearsay pursuant to Rule 801(d)(2)(D). See FED. R. CIV. P. 32(a)(8). Because the prior deposition testimony is not hearsay and is otherwise admissible, the Court overrules Defendants' objection on this basis.

## V.     Defendants' Objection to Plaintiffs' Declarations [Doc. 165]

Next, the Court turns to "Defendants' Renewed Notice of Objection to Plaintiffs' Declarations." [Doc. 165]. By their second objection, Defendants protest

Plaintiffs' use of their own Declarations[6] in support of their opposition to Defendants' motion for summary judgment.[7]   [See id. at 1].   According to Defendants, Plaintiffs' Declarations are improper because they attempt "to create issues of fact where none exist." [See id. at 3] (citing Kimemiah v. Sun Valley Tech Sols., Inc., No. 1:13-CV-04156-ELR, 2016 WL 7438018, at *2 (N.D. Ga. Jan. 8, 2016).   The Court first sets out the relevant legal standard before addressing the Parties' arguments.

### A.   Legal Standard

Rule 56 provides that a party may use an affidavit or declaration in support of or in opposition to a motion for summary judgment.   See FED. R. CIV. P. 56(c)(4). Rule 56 requires that such an affidavit or declaration must (1) be made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated.   See id.

Recognizing that parties might try to avoid summary judgment by using affidavits to create issues of fact where none exist, the Eleventh Circuit permits

---

[6] [See Docs. 101-6, 101-7, 101-8, 101-9, 101-10, 101-11, 101-12, 101-13, 101-14, 101-15, 101-17, 101-18].

[7] Declarations were provided by Plaintiffs Tierra Blanding ("Blanding Decl.") [Doc. 167-32]; Crystal Crittendon ("Crittendon Decl.")  [Doc. 167-33]; Shaleah Daye ("Daye Decl.") [Doc. 167-34]; Riana East ("East Decl.") [Doc. 167-35]; Cassidy Gates ("Gates Decl.") [Doc. 167-36]; Jovana Gibbs-Arnold ("Gibbs-Arnold Decl.") [Doc. 167-37]; Ashley Hayes ("Hayes Decl.") [Doc. 167-38]; Basia Hayes-Loper ("Loper Decl.") [Doc. 167-39]; Marriah Hilliard ("Hilliard Decl.") [Doc. 167-40]; Tiffany Lowe ("Lowe Decl.") [Doc. 167-41]; Megan Thomas ("Thomas Decl.") [Doc. 167-43]; Samantha Williams ("Williams Decl.") [Doc. 167-44]; and Jasmine Ross ("Ross Decl.") [Doc. 167-45].

district courts to disregard an affidavit as a "sham" if it directly contradicts earlier deposition testimony in a manner that cannot be explained.  See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657–58 (11th Cir. 1984).  The "sham affidavit rule" applies only in limited circumstances: not "[e]very discrepancy contained in an affidavit" can justify "a district court's refusal to give credence to such evidence."  See Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986) (internal quotations omitted).  Thus, the Court must be careful to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence."  See id. at 953.  However, "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  See Liebman v. Metro. Life Ins. Co., 708 F. App'x 979, 983 (11th Cir. 2017) (internal citations omitted).

B.  **Discussion**

Having set forth the relevant legal standard, the Court now turns the substance of Defendants' objections.  In the matter at hand, Defendants take issue with Plaintiffs' Declarations for several reasons.  [See Doc. 165].  First, Defendants contend Plaintiffs' Declarations present notable inconsistencies when compared to

Plaintiffs' prior deposition testimony.[8]   [See id.]   Defendants also object to Plaintiffs' "alleged" lack of personal knowledge on the topics addressed by the Declarations. [See id.]  In total, Defendants highlight fifteen (15) "issues" regarding Plaintiffs' Declarations to which they object. [See id.]

As a preliminary matter, the Court notes that Plaintiffs do not oppose Defendants' objection to Paragraphs 21 through 24 of the Declarations of Plaintiffs Crittendon and East.  [See Doc. 178 at 13].  Therefore, the Court strikes these paragraphs and disregards them.  See Crittendon Decl. ¶¶ 21–24; East Decl. ¶¶ 21–24.  Additionally, Defendants object to the Declaration of Mary Mays [Doc. 167-42], noting she is not a Plaintiff in this matter.  [See Doc. 165 at 1 n.2].  Plaintiffs did not respond to this objection, and thus, it stands unopposed.  [See generally Doc. 177]; see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition[.]").  Therefore, the Court also strikes the Declaration of Mary Mays and disregards it for the purpose of resolving Defendants' motion for summary judgment.  [Doc. 167-42].

---

[8] Dep. of Tierra Blanding [Doc. 132]; Dep. of Crystal Crittendon ("Crittendon Dep.") [Doc. 133]; Dep. of Shaleah Daye ("Daye Dep.") [Doc 134]; Dep. of Riana East ("East Dep.") [Doc. 135]; Dep. of Cassidy Gates ("Gates Dep.") [Doc. 136]; Dep. of Jovanna Gibbs-Arnold ("Gibbs-Arnold Dep.") [Doc. 137]; Dep. of Ashley Hayes ("Hayes Dep.") [Doc. 138]; Dep. of Basia Hayes Loper ("Loper Dep.") [Doc. 139]; Dep. of Marriah Hilliard ("Hilliard Dep.") [Doc. 140]; Dep. of Tiffany Lowe ("Lowe Dep.") [Doc. 141]; Dep. of Jasmine Ross ("Ross Dep.") [Doc. 142]; Dep. of Megan Thomas ("Thomas Dep.") [Doc. 143]; Dep. of Samantha Williams ("Williams Dep.") [Doc. 144].

As for Defendants' remaining objections to Plaintiffs' Declarations, the Court finds that they fall into four (4) broad categories: (1) objections to statements regarding house moms, (2) objections to statements regarding Bob Johnson, (3) objections to statements regarding the tip credit policy, and (4) objections to statements regarding other "kickbacks."

  1. <u>House moms</u>

The Court begins with Defendants' objections to Plaintiffs' statements regarding house moms, including Samantha Kim. [<u>See</u> Doc. 165 at 6–11, 20–21, 23–24]. The disputed statements regarding house moms may be generally characterized as: (1) statements about tipping house moms and (2) statements about the duties of house moms. [<u>See</u> <u>id.</u>] First, Defendants object to statements in Plaintiffs' Declarations that Plaintiffs "allegedly felt pressured to tip the house moms" because Plaintiffs' deposition testimony contradicts those statements. [<u>See</u> <u>id.</u> at 20] (citing deposition testimony). In response, Plaintiffs merely proffer that "Defendants have not proven that the tips [to house moms] were voluntary, not a condition of employment or free of coercion" and offer no further explanation. [<u>See</u> Doc. 178 at 10].

The Court finds Plaintiffs' explanation to be deficient. As noted above, the Court may disregard statements contained in a declaration if the statements directly contradict earlier deposition testimony in a manner that cannot be explained. <u>See</u>

Van T. Junkins, 736 F.2d at 657–58.  Here, Plaintiffs fail to explain the discrepancies between their declarations and deposition testimony, nor do Plaintiffs provide any explanation for their contradictory statements.  [See Doc. 178 at 10].  Accordingly, the Court finds that the above statements with regards to tipping house moms must be stricken, and the Court disregards them in deciding summary judgment.

Because the Court finds that Plaintiffs fail to establish the house moms were participants in the tip pool—and that tipping them was mandatory—the Court agrees with Defendants that any statements about the duties of house moms are irrelevant. See Fed. R. Evid. 401(b) (noting that evidence is relevant "if the fact is of consequence in determining the action").  Thus, for the aforementioned reasons, the Court will also strike paragraphs of Plaintiffs' Declarations regarding the duties of house moms and disregards them when considering Defendants' motion for summary judgment.[9]

### 2.   Bob Johnson

Next, the Court turns to Defendants' objections regarding the statements contained in Plaintiffs' Declarations concerning Bob Johnson.  [See Doc. 165 at 6–10].  Bob Johnson began working for The Cheetah in 2007, and the Parties dispute whether he served as a "manager/employer" or, alternatively, as a floorman during

---

[9] This includes striking Paragraph 9 of Loper's Declaration regarding house moms' alleged duties and responsibilities.  [See Doc. 165 at 23]; see also Loper Decl. ¶ 9.

the relevant time period. [See generally Docs. 131-1, 161, 162]. Thus, Defendants object to Plaintiffs' statements in their Declarations that Johnson "supervised" or "managed" the dancers and contend such statements constitute improper legal conclusions. [See Doc. 165 at 6–10]. In turn, Plaintiffs claim Johnson's "supervisory and/or managerial control over Plaintiffs is unquestionably relevant for purposes of determining whether [he] acted on behalf of Defendant Cheetah and [was] and [an] employer[] under 29 U.S.C. ¶ 203(d)." [See Doc. 178 at 4].

Upon review, the Court agrees with Plaintiffs. The extent to which Bob Johnson had control over the entertainers is certainly relevant to the validity of Defendants' tip pool. Thus, the Court overrules Defendants' objection and will consider Plaintiffs' statements regarding Bob Johnson to the extent that the statements do not contradict Plaintiffs' previous deposition testimony. See Van T. Junkins, 736 F.2d at 657–58.

The Court next turns to Defendants' objections to Paragraph 6 of Plaintiff Daye's Declaration and Paragraph 8 of Plaintiff Lowe's Declaration. [See Doc. 165 at 22–24]. By their objections, Defendants contend that Paragraph 6 of Daye's Declaration and Paragraph 8 of Lowe's Declaration regarding Bob Johnson's ability to discipline/fire entertainers directly contradict their corresponding deposition testimony. [See id. at 22–23]; see also Lowe Dec. ¶ 8; Day Decl. 6. Specifically, Defendants rely on statements Plaintiffs Daye and Lowe made during their

depositions that they did not know whether Johnson could hire or fire entertainers. [See Doc. 165 at 22–23]; see also Lowe Dep. at 45:3–4; Daye Dep. at 38:10–18.   In response, Plaintiffs characterize Defendants' objections as "inappropriate" and contend that the above disputed statements do not "directly" contradict previous deposition testimony.  [See Doc. 178 at 11–12].

However, the Court disagrees with Plaintiffs.  Upon review, the Court finds Plaintiffs Daye and Lowe testified in their depositions that they did not know whether Johnson had hiring or firing power at The Cheetah.  See Lowe Dep. at 42:8–43:1, 45:3–4; Daye Dep. at 38:10–18.  Plaintiffs do not proffer any explanation to explain the discrepancy in their current declarations.  See Liebman, 708 F. App'x at 983 (11th Cir. 2017) ("when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony").  Accordingly, the Court strikes and disregards Paragraph 6 of Daye's Declaration and Paragraph 8 of Lowe's Declaration in deciding summary judgment.

### 3.   Tip Policies

Next, the Court turns to Defendants' objection regarding The Cheetah's tip policy.   By this objection, Defendants maintain that Plaintiffs "have not demonstrated how they have personal knowledge about how the tip pool was

ultimately distributed" and that Plaintiffs' references to sharing tips with management constitute "improper legal conclusion[s]." [See Doc. 165 at 11–12].

Upon due consideration, the Court sustains in part and overrules in part Defendants' objection. As participants in the tip pool, it is indisputable that Plaintiffs have personal knowledge about how the tip pool at The Cheetah operated. Thus, the Court finds that Plaintiffs have demonstrated sufficient personal knowledge of the tip policy, subject to the limitations explained above regarding Plaintiffs' contradictory statements about the participation of house moms in the tip pool. As noted above, Plaintiffs have failed to explain that contradiction. [See Doc. 178 at 6]; see also Van T. Junkins, 736 F.2d at 657–58. Accordingly, the Court will consider Plaintiffs' statements regarding the tip policy and its operation, except regarding the tipping of house moms.

### 4. Kickbacks

Finally, the Court addresses Defendants' objection to statements in Plaintiffs' Declarations regarding their Count III—Unlawful Taking of Tips (Violation of 29 U.S.C. § 203). [Doc. 165 at 14–20]. Specifically, Defendants object to Plaintiffs' statements regarding The Cheetah's purported physical appearance policy,[10]

---

[10] Blanding Decl. ¶ 12; Crittendon Decl. ¶ 11; Daye Decl. ¶ 10; East Decl. ¶ 11; Gates Decl. ¶ 11; Gibbs-Arnold Decl. ¶ 11; Hayes Decl. ¶ 11; Hilliard Decl. ¶ 11; Lowe Decl. ¶ 13; Williams Decl. ¶ 11.

purported waiting policy,[11] payments to hair stylists and makeup artists,[12] payments for adult entertainment permits,[13] payments for covers,[14] and payments regarding parking fees.[15]  [See id. at 14–20].  As further explained below (see infra VI(B)(3)), the Court finds that any allegations regarding "kickback" payments for parking, permit fees, and hair/makeup stylists are untimely because they were not included in the Complaint or Amended Complaint, and the time for amending the pleadings has passed.  See Fed. R. Civ. P. 15(a); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Thus, the Court will disregard Plaintiffs' statements regarding The Cheetah's purported physical appearance policy, payments to hair stylists and makeup artists, payments for adult entertainment permits, and payments regarding parking fees.

---

[11] Blanding Decl. ¶¶ 16–18; Crittendon Decl. ¶¶ 15–17; Daye Decl. ¶¶ 15–17; East Decl. ¶¶ 15–17; Gates Decl. ¶¶ 15–17; Gibbs-Arnold Decl. ¶¶ 15–17; Hayes Decl. ¶ 14; Hilliard Decl. ¶ 14; Loper Decl. ¶ 11; Lowe Decl. ¶¶ 17–19; Thomas Decl. ¶¶ 11–13; Williams Decl. ¶ 15; Ross Decl. ¶¶ 12–14.

[12] Blanding Decl. ¶¶ 13–15; Crittendon Decl. ¶¶ 12–14; Daye Decl. ¶¶ 11, 13–14; East Decl. ¶¶ 12–14; Gates Decl. ¶¶ 12–13; Gibbs-Arnold Decl. ¶¶ 12–14; Hayes Decl. ¶¶ 12–13; Hilliard Decl. ¶¶ 12–13; Lowe Decl. ¶¶ 14–16; Williams Decl. ¶¶ 12–13.

[13] Blanding Decl. ¶ 19; Crittendon Decl. ¶ 18; Daye Decl. ¶ 18; East Decl. ¶ 18; Gates Decl. ¶ 18; Gibbs-Arnold Decl. ¶ 18; Hayes Decl. ¶ 15; Hilliard Decl. ¶ 15; Lowe Decl. ¶ 20; Thomas Decl. ¶ 14; Williams Decl. ¶ 18; Ross Decl. ¶ 15.

[14] Blanding Decl. ¶ 26; Crittendon Decl. ¶ 26; Daye Decl. ¶ 22; East Decl. ¶ 11; Gates Decl. ¶ 22; Gibbs-Arnold Decl. ¶ 21; Hayes Decl. ¶ 19; Hilliard Decl. ¶ 17; Lowe Decl. ¶ 24; Williams Decl. ¶ 26; Ross Dec. ¶ 18.

[15] Blanding Decl. ¶ 20; Crittendon Decl. ¶ 19; Daye Decl. ¶ 19; East Decl. ¶ 19; Gates Decl. ¶ 19; Gibbs-Arnold Decl. ¶ 19; Hayes Decl. ¶ 16; Hilliard Decl. ¶ 15; Loper Decl. ¶ 12; Lowe Decl. ¶ 21; Thomas Decl. ¶ 15; Williams Decl. ¶ 19; Ross Decl. ¶ 16.

In addition, Plaintiffs' statements in their Declarations regarding The Cheetah's purported waiting policy are irrelevant because Plaintiffs state they do not oppose Defendants' motion for summary judgment with respect to their Count II—Overtime Wage Claim (Violation of 29 U.S.C. § 207).  [See Doc. 161 at 1 n.1]. Thus, the Court strikes these statements and will disregard them in deciding summary judgment.

Finally, the statements regarding covers as "required" are directly contradicted by Plaintiffs' deposition testimony that covers could be obtained for free and Plaintiffs have not offered an explanation for that contradiction.  See Blanding Dep. at 27:13–17; Gibbs-Arnold Dep. at 66:1–5; Daye Dep. at 48:2–22; Gates Dep. at 52:25–53:14;  Hayes  Dep. at 60:5-7;  Hilliard  Dep. at  32:11–13, 54:8–11;  Lowe  Dep. at  52:6–10; Thomas Dep. at 52:2–53:2, 55:2–9; Williams Dep. at 31:9–1; [see also Doc. 178 at 6–7].  Accordingly, the Court strikes these paragraphs and will disregard the aforementioned paragraphs of Plaintiffs' Declarations.

In sum, the Court overrules in part and sustains in part Defendants' objections. Specifically, the extent to which Bob Johnson had control over the adult entertainers/dancers is certainly relevant to the validity of Defendants' tip pool. Thus, the Court overrules Defendants' objection and will consider Plaintiffs'

statements regarding Bob Johnson to the extent that the statements do not contradict Plaintiffs' previous deposition testimony.

Additionally, as participants in the tip pool, it is obvious that Plaintiffs have personal knowledge about how their tips at The Cheetah operated.  Thus, the Court finds that Plaintiffs have demonstrated personal knowledge.  However, the Court finds that any statements about tips being shared with house moms (including Samantha Kim) are contradictory to Plaintiffs' earlier deposition testimony, and Plaintiffs have failed to explain that contradiction.

Finally, for the reasons stated above, the Court finds that Plaintiffs' statements in their Declarations regarding The Cheetah's purported physical appearance policy, purported waiting policy, payments to hair stylists and makeup artists, payments for adult entertainment permits, payments for covers, and payments regarding parking fees must be excluded.

## VI.    Motion for Summary Judgment [Doc. 131]

Having resolved Defendants' evidentiary objections, the Court now turns its attention to the merits of the instant motion for summary judgment.  Defendants advance four (4) primary arguments in support of their motion.  [See Doc. 131-1]. First, Defendants contend that Plaintiffs' overtime wage claims are not recoverable because they seek compensation for non-compensable preliminary and postliminary activities.  [See id.]  Second, Defendants maintain that The Cheetah's tip policy is

valid because no employers or managers participated in the tip pool.  [See id.]  Third, Defendants claim that none of Plaintiffs' claims for other payments are recoverable pursuant to the FLSA because those alleged payments were either voluntary or Plaintiffs have failed to articulate how those alleged payments benefited The Cheetah.  [See id.]  Finally, Defendants assert that even if the Court finds The Cheetah's tip policy violated the FLSA, they cannot be held liable because any such violation was not willful.  [See id.]  The Court first sets out the relevant legal standard before turning to the substance of the Parties' arguments.

### A.    Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See FED. R. CIV. P. 56(a).  A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law.  See id.  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  See id. at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and

resolve all factual disputes in the non-moving party's favor.   See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position.   See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  See id. at 324–26.  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251–52.

## B.    Discussion

Having set forth the relevant legal standard, the Court turns to Defendants' motion.  In their Amended Complaint, Plaintiffs bring three (3) counts against Defendants:  Count I—Minimum Wage Claim (Violation of 29 U.S.C. § 206); Count II—Overtime Wage Claim (Violation of 29 U.S.C. § 207); Count III—Unlawful Taking of Tips (Violation of 29 U.S.C. § 203).  See Am. Compl.  Defendants argue that the undisputed facts of this case foreclose all of Plaintiffs' claims.  The Court discusses each Count in turn.

1.   <u>Plaintiffs' Count I—Minimum Wage Claim</u>

The Court begins with Plaintiffs' claim regarding the FLSA's tip credit policy as it relates to the minimum wage requirement.  Plaintiffs contend that Defendants' tip credit policy was invalid for three (3) reasons.  First, Plaintiffs were required to participate in forced tip-outs and forced "covers" to other entertainers, which caused their wages to fall below $2.13 per hour.  [<u>See</u> Doc. 161 at 13].  Second, Plaintiffs allege that two (2) tip policies—a written tip policy and an unwritten but equally mandatory tip policy—were both unlawfully enforced at The Cheetah in violation of the FLSA.  [<u>See</u> <u>id.</u>]  Finally, Plaintiffs claim that the mandatory tip pool was invalid because it included The Cheetah's "night manager" (Bob Johnson), "day manager" (Samantha Kim),[16] and house moms.  [<u>See</u> <u>id.</u> at 16].  However, in their motion for summary judgment, Defendants argue the contrary—that The Cheetah's tip credit policy is valid and no unlawful tip-pooling with managers or employers occurred.  [<u>See generally</u> Doc. 131-1].  The Court first sets out the legal framework regarding FLSA tip credits before turning to an assessment of the Parties' arguments.

a.   *Legal framework*

As noted above, the FLSA requires employers to pay employees a minimum wage of $7.25 per hour.  <u>See</u> 29 U.S.C. § 206(a)(1).  Recognizing that many

---

[16] Samantha Kim is characterized as both a house mom and day shift manager.  <u>See, e.g.</u>, Crittendon Dep. at 65:16–23; Daye Dep. at 41:11–14; East Dep. at 53:24–25; Lowe Dep. at 46:6–7.

employees earn income through tips, the "tip credit" provision of the FLSA allows employers to incorporate employees' tips into their wage calculation to satisfy the minimum wage requirement, provided that certain conditions are met.  See 29 U.S.C. § 203(m)(2)(A).  The statute sets forth two (2) requirements for employers who avail themselves of the tip credit policy:

> [t]he [tip credit] shall not apply with respect to any tipped employee unless [1] such employee has been informed by the employer of the provisions of this subsection, and [2] all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Id.  In other words, for a tip credit policy to be valid: (1) the employer must give employees notice of the tip credit policy, and (2) employees must retain all tips received—except where the employer requires the employees to participate in tip-pooling to redistribute a portion of their tips to other employees who "customarily and regularly receive tips."  See id.

Prior to March 23, 2018, only employers were prohibited by the FLSA from participating in a tip pool.  Cf. Kubiak v. S.W. Cowboy, Inc., 164 F. Supp. 3d 1344, 1361–62 (M.D. Fla. 2016) ("[S]ection 203(m) effectively prohibits any arrangement or agreement between an employer and employee whereby any portion of the employee's tips becomes the property of the employer").  However, after March 23, 2018, Section § 203(m) was modified to prohibit managers and supervisors from participating in a tip pool.  See 29 U.S.C. § 203(m)(B) ("An employer may not keep

tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips regardless of whether or not the employer takes a tip credit.") (effective March 23, 2018); see also Miller v. Garibaldi's Inc., No. CV414-007, 2018 WL 1567856, at *4 (S.D. Ga. Mar. 30, 2018).

> b.    *Analysis*

The Court now assesses the Parties' arguments regarding The Cheetah's tip policy as it relates to Plaintiffs' claim for minimum wages.  As mentioned above, for a tip credit policy to be valid: (1) the employer must give employees notice of the tip credit policy, and (2) employees must retain all tips received—except where the employer requires the employees to participate in tip pooling to redistribute a portion of their tips to other employees who "customarily and regularly receive tips." See 29 U.S.C. § 203(m)(2)(A).

The Cheetah's written tip policy for dancers stated:

> [y]ou are required to contribute 10% of your total tips to floor managers and disc jockeys (collectively) as part of a tip-pooling arrangement.  No other mandatory tipping is required.  With the exception of any lawful contributions to a tip pool that you may be required to make, the applicable law requires that you be allowed to retain all of your remaining tips.  Management will not retain any of your tips.

See Defs.' SOMF ¶ 32.  Although the written tip policy stated that "management will not retain any of your tips," Plaintiffs contend they were forced to share their tips with Bob Johnson (a floorman who purportedly also served as a night manager),

Samantha Kim (a house mom and day shift manager), and house moms, all of whom Plaintiffs claim exercised supervisory and managerial authority over them and other entertainers.  [See Doc. 161 at 14–24].  Thus, Plaintiffs argue The Cheetah's tip pool was invalid as it violated the second condition of Section 203(m)(2)(A).  [See id. at 23].

The Court now examines the validity of The Cheetah's tip credit policy in light of how the tip pool operated with regards to the house moms and Samantha Kim before turning to the Parties' arguments regarding Bob Johnson.

### i. *Samantha Kim and house moms*

The Court begins with the Parties' arguments regarding tips given to Samantha Kim and house moms.  Defendants argue that they are entitled to summary judgment on this point because Samantha Kim and house moms were not included in the mandatory tip pool.  [See Docs. 131-1 at 27–28; 162 at 10–11].  In support, Defendants provide evidence that any tips Kim and house moms received were voluntarily shared by Plaintiffs.  [See id.]; see also Kubiak, 164 F. Supp. 3d at 1355 (stating that "a tipped employee may voluntarily choose to share tips with an otherwise ineligible employee so long as that tip-sharing is done without coercion by the employer").

While Plaintiffs contend in their briefs that tips to house moms and Kim were "mandatory," the Court finds that the evidence in the record contradicts that

assertion.  [See Doc. 161 at 10, 16–24].  In fact, the evidence demonstrates that Kim and the house moms were not included in The Cheetah's mandatory tip pool, and that the house moms were even vocally upset that they were excluded from the policy.  See, e.g., Crittendon Dep. at 70:4–25; Daye Dep. at 52:1–3; East Dep. at 17:23–18:2; Gibbs-Arnold Dep. at 53:20–21; 98:15–22; Hilliard Dep. 38:20–21 ("I also tipped the house moms. They weren't included in that 10 percent.").  Because Plaintiffs fail to show house moms and Samantha Kim were included in the mandatory tip pool, the Court finds that Defendants are entitled to summary judgment on this point.

### ii.    Bob Johnson

Next, the Court turns to the Parties' arguments regarding Bob Johnson's supposed improper participation in the tip pool.  The gravamen of the dispute is whether—during the relevant time period—Johnson served as a "manager/employer" or instead acted only as a floorman.  [See generally Docs. 131-1, 161, 162].

As is relevant here, the FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  See 29 U.S.C. § 203(d).  "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of

the whole activity." Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1159 (11th Cir. 2008) (internal quotation and citation omitted).

In determining whether an individual is an employer under the FLSA, the court must examine the facts "in light of the 'economic reality' of the relationship between the parties." See Villarreal v. Woodman, 113 F.3d 202, 205 (11th Cir. 1997) (quoting Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33 (1961)). The Eleventh Circuit provides several factors for courts to consider in determining whether a person is an employer under the FLSA pursuant to the economic-reality test: whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. See id.

Here, Defendants argue that although Johnson was called a "night manager," he did not qualify as a manager or employer according to the FLSA's definition. [See Docs. 131-1 at 23–27; 162 at 11–16]. Specifically, Defendants argue that an employee is only a manager or supervisor for the purposes of Section 203(m) where he is "[c]ompensated on a salary basis pursuant to [a set rate]." [See Doc. 131-1 at 27] (citing 29 C.F.R. § 541.100(a)). Defendants present evidence that until June or July 2018, Johnson was paid an hourly wage and was not a salaried employee. [See id.] They claim that once Johnson began receiving a salary, he stopped participating

in the tip pool.  [See id.]  Additionally, Defendants contend that Johnson was not an employer because "[t]here is no evidence Johnson held any (let alone, substantial) control over The Cheetah's FLSA obligations, terms of employment or compensation, schedules, or maintaining records."  [See Doc. 162 at 14].

In response, Plaintiffs argue that Johnson wielded enough control to qualify him as an employer and manager.  [See Doc. 161 at 17–20].  For example, Plaintiffs proffer that (1) Johnson has been called the "night manager" since 2007, (2) Johnson is one of the most senior employees at The Cheetah, (3) Johnson had the power to discipline entertainers, (4) and entertainers would come to Johnson to address problems with customers, house moms, or floormen.  See Pls.' SOMF ¶¶ 41–50; see also October 23, 2017 Dep. of Robert Johnson at 7:13–8:17, 14:1–15, 34:13–20 [Doc. 172]; August 12, 2019 Dep. of Holly Wood at 12:2–3 [Doc. 159]; see also De Leon-Granados v. Eller & Sons Trees, Inc., 581 F. Supp. 2d 1295, 1303 (N.D. Ga. 2008) ("Supreme Court precedent holds that there may be several simultaneous employers of any individual worker.") (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)).

The Court finds that a genuine issue of material fact exists as to the degree of control Johnson possessed over Plaintiffs.  Because the legal determination of whether Johnson was a manager/employer depends on genuine issues of material fact, summary judgment is inappropriate on this issue.  See Miller, 2018 WL

1567856, at *4 (denying summary judgment when there was a genuine issue of material fact as to the amount of control "managers on duty" exercised over other employees).   Therefore, the Court grants in part and denies in part Defendants' motion for summary judgment with respect to Plaintiffs' Count I.  Specifically, the Court grants summary judgment with respect to Plaintiffs' claim regarding house moms and Samantha Kim.  However, the Court denies summary judgment with respect to Plaintiffs' claim regarding Bob Johnson.

2.   <u>Plaintiffs Count II—Overtime Wage Claim</u>

Next, the Court turns to Plaintiffs' overtime wage claim regarding their pre-shift and post-shift activities.  <u>See</u> Am Compl. ¶¶ 161–169.  In their Amended Complaint, Plaintiffs allege that Defendants failed to pay earned overtime wages for the time they spent preparing for work and waiting after work to depart pursuant to The Cheetah's "waiting policy."  <u>See</u> <u>id.</u> ¶¶ 120–127, 166.  However, Defendants contend that Plaintiffs cannot be compensated for the time and money they spent "getting ready" for their shifts because pre-shift preparation is preliminary work, not covered by the FLSA.  [<u>See</u> Doc. 131-1 at 9–12].  Additionally, Defendants claim that pursuant to binding precedent, they are not required to compensate Plaintiffs for any postliminary activities, including the time Plaintiffs spent on post-shift check-out procedures and waiting for customers to leave.  [<u>See</u> <u>id.</u> at 13–16].  In their

response, Plaintiffs state that they do not oppose Defendants' motion with respect to preliminary and postliminary time. [See Doc. 161 at 1 n.1].

However, an unopposed motion for summary judgment does not mean the moving party automatically prevails, because this Court must still consider the merits of Defendants' motion with regards to this claim. See United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) ("the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion"). Thus, the Court examines whether Plaintiffs are entitled to overtime wages for their pre-shift and post-shift activities.

The FLSA requires an employer to compensate any employee who works in excess of forty (40) hours per week at an overtime rate (typically, one and one-half times the employee's regular pay rate). See Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). However, pursuant to the Portal-to-Portal Act of 1947, employers are exempt from liability for failure to compensate an employee for:

> (2) activities which are preliminary to or postliminary to [the employee's] principal activity or activities . . .
>
> which occur either prior to the time of any particular workday at which such employee commences, or subsequent to the time on any particular workday at which [she] ceases, such principal activity or activities.

See 29 U.S.C. § 254(a). Here, the term "principal activity or activities" includes "all activities that are an 'integral and indispensable part of the principal activities.'" See

Llorca v. Sheriff, Collier Cnty., 893 F.3d 1319, 1323 (11th Cir. 2018) (quoting

Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).  Thus, "preliminary and postliminary

activities are compensable only if they are *both* an integral *and* indispensable part of

the principal activities."  See id. at 1324 (emphasis in original) (internal citations

omitted).

The Eleventh Circuit has explained that "indispensable is not synonymous

with integral."  See id. at 1323 (internal marks and citation omitted).  "The fact that

certain preshift [and postshift] activities are *necessary* for employees to engage in

their principal activities does not mean that those [] activities are '*integral and*

*indispensable*' to a principal activity[.]"  Bonilla v. Baker Concrete Constr., Inc.,

487 F.3d 1340, 1344 (11th Cir. 2007) (emphasis added) (internal marks and citation

omitted).  Therefore, "[a]n activity is integral and indispensable to an employee's

principal activities if the activity is an intrinsic element of those activities and one

with which the employee cannot dispense if [s]he is to perform the activities."  See

Meeks v. Pasco Cty., 688 F. App'x 714, 717 (11th Cir. 2017) (internal marks and

citation omitted).

Here, the Court finds that as a matter of law, Plaintiffs are not entitled to

receive compensation for their pre-shift and post-shift activities.  Specifically, the

Court finds that based on relevant precedent, Plaintiffs' actions in "getting ready,"

completing check-out procedures, and waiting for customers to vacate the premises

before leaving work were not "integral and indispensable" to the principal activities Plaintiffs were employed to perform.  See Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 37 (2014) ("an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities").  Thus, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' Count II.  See id. at 39 (Sotomayor, J., concurring) (explaining that 29 U.S.C. § 254(a) "distinguishes between activities that are essentially part of the ingress and egress process, on the one hand, and activities that constitute the actual 'work of consequence performed for an employer,' on the other hand").

    3.    Plaintiffs' Count III—Unlawful Taking of Tips

    Finally, the Court addresses Plaintiffs' claim for Defendants' alleged unlawful taking of tips.  [See Doc. 161 at 3].  Pursuant to the FLSA, employers must pay employees their wages "finally and unconditionally," "free and clear" of any direct or indirect "kickbacks."  See 29 C.F.R. § 531.35;[17] see also Arriaga v. Fla. Pac.

---

[17] In relevant part, 29 C.F.R. § 531.35 states that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'"  See 29 C.F.R. § 531.35.  Additionally, "[t]he wage requirements of the [FLSA] will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  See id.

Farms, L.L.C., 305 F.3d 1228, 1241 (11th Cir. 2002) ("The FLSA prevents improper deductions from reducing the wages of a worker below the minimum wage.").

Here, Plaintiffs claim the various expenses they incurred in furtherance of their employment constituted fees that were either kicked back to the employer or paid for the employer's benefit. [See Doc. 161 at 4] (citing De Leon-Granados, 581 F. Supp. 2d at 1315 (explaining that "requiring employees to pay for expenses incurred for the benefit of the employer functions as a *de facto* wage deduction")). According to Plaintiffs, these fees included payments for "(i) permits; (ii) covers; (iii) VIP referrals; (iv) parking fees; (v) hair stylists and make-up artists; and (vi) house moms[.]"   [See id. at 5].   Plaintiffs assert that all these fees "were impermissible deductions pursuant to the FLSA." [See id.]

As discussed above, the Court finds that Plaintiffs' unlawful deduction claims regarding City of Atlanta adult entertainment work permit fees, parking fees, and payments to makeup artists/hair stylists may not proceed because Plaintiffs did not include these allegations in their Amended Complaint.  See generally Am. Compl. Instead, Plaintiffs raise these allegations for the first time in their response to Defendants' motion for summary judgment.  [See Doc. 161 at 3–11]; see also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) (requiring the plaintiff to amend the complaint before raising a claim at summary judgment); Gilmour, 382 F.3d at 1315 ("A plaintiff may not amend her complaint

through argument in a brief opposing summary judgment.").  Accordingly, the Court will not consider these purported fees in deciding summary judgment on Plaintiffs' unlawful deduction claim.

Thus, the remaining categories in dispute concern "alleged unlawful payments" Plaintiffs made for VIP referrals, "cover" fees, and tips to house moms. As mentioned above, the FLSA requires employers to pay employees their wages "finally and unconditionally," "free and clear" of any direct or indirect "kickbacks." See 29 C.F.R. § 531.35.  "If an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose."  Arriaga, 305 F.3d at 1237.  However, before this provision is even triggered, Plaintiffs must prove that any payments or expenses were "required" and for the employer's benefit.  See id.; see also Benton v. Deli Mgmt., 396 F. Supp. 3d 1261, 1270 (N.D. Ga. 2019) (noting that a "plain reading" of 29 C.F.R. § 531.35 shows that "requiring [the plaintiffs] to cover the costs of their vehicles that are used for [the defendant's] business constitute an illegal kickback, insofar as they are required to cover the cost of these expenses, and that cost drives their wages below the FLSA minimum").

With regards with payments for VIP referrals, house moms, and cover fees, Plaintiffs have not demonstrated that these "payments" were mandatory or "required" by Defendants.  See Pls.' Resp. to Defs.' SOMF ¶¶ 59–60, 101, 126.  In

fact, Plaintiffs previously testified that payments for VIP referrals, house moms, and cover fees were often voluntarily given, or not given at all. See, e.g., Blandings Dep. at 22:16–23:3, Loper Dep. at 38:16–25; Lowe Dep. at 34:15–21; Ross Dep. at 14:23–16:17; Daye Dep. at 51:14–32:3; Hays Dep. at 54:14–18; Hilliard Dep. at 17:16–18:11, 38:20–39:5, 53:23–54:7; Thomas Dep. at 72:20–73:3; Williams Dep. at 40:3–41:12, 58:18–20; Wood Dep. at 14:13–16, 29:12–22. Because Plaintiffs fail to establish these payments were required, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' Count III.

### 4.   Willfulness

Finally, the Court turns to Defendants' last argument in their motion for summary judgment. Defendants contend even they violated the FLSA, Plaintiffs cannot show that any such violation was "willful." [See Doc. 131-1 at 33–34]. Thus, Defendants seek a ruling that the FLSA two (2)-year statute of limitations should apply in this case, thereby rendering Plaintiffs' claims time-barred. [See id.]

Generally, the FLSA provides a two (2)-year statute of limitations to enforce its provisions, but allows a three (3)-year limitations period for a "cause of action arising out of a willful violation." See 29 U.S.C. § 255(a). A willful violation occurs if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

However, the Court cannot resolve the questions of willfulness and the applicable statute of limitations at this juncture. Because the Court finds a genuine issue of material fact exists regarding Plaintiffs' Count I (concerning The Cheetah's tip credit policy with respect to the role of Bob Johnson), Plaintiffs must now prove at trial that Defendants actually violated the FLSA's minimum wage provision. Absent a determination of whether Defendants violated the FLSA in this regard, it is improper for the Court to preemptively decide the issue of any potential willfulness (or lack thereof). See Allen, 495 F.3d at 1324. In Allen, the Eleventh Circuit reversed the district court's grant of summary judgment to the employer and found that the issue of willfulness should await the jury's determination of underlying liability:

> [w]e have concluded that triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without compensation; as such, the district court's ruling that the two-year limitation applies is reversed and a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred in this case.

See id. In accordance with this precedent, the Court finds the issue of willfulness must await the jury's consideration of whether Defendants violated the FLSA's minimum wage provision. See 29 U.S.C. § 206. Accordingly, the Court denies Defendants' motion for summary judgment with regards to the issue of willfulness.

## VII.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' "Motion to Dismiss Plaintiff Rachelle Caliendo for Failure to Appear."   [Doc. 127]. Accordingly, the Court **DISMISSES WITH PREJUDICE** Rachelle Caliendo with respect to her remaining claims against Defendants and **AWARDS** Defendants their reasonable expenses, including attorneys' fees, incurred regarding Ms. Caliendo's failure to appear for both of her noticed depositions.

Next, for the reasons stated above, the **OVERRULES** "Defendants' Renewed Notice of Objection to Depositions Taken in Other Matters [Docs. 104 through 109]" [Doc. 164] and **OVERRULES IN PART AND SUSTAINS IN PART** "Defendants' Renewed Notice of Objection to Plaintiffs' Declarations." [Doc. 165].

Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' "Renewed Motion for Summary Judgment on Liability." [Doc. 131]. Specifically, the Court **GRANTS** Defendants' motion with regards to Plaintiffs' Count II: Overtime Wage Claim (Violation of 29 U.S.C. § 207) and Count III: Unlawful Taking of Tips (Violation of 29 U.S.C. § 203), and **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendants on these claims.  Additionally, the Court **GRANTS IN PART AND DENIES** Defendants' motion with regards to Plaintiffs' remaining Count I—Minimum Wage Claim (Violation of 29 U.S.C. § 206).  Specifically, the Court **GRANTS** summary judgment with respect to any

allegations concerning house moms and Samantha Kim.   However, the Court **DENIES** summary judgment with respect to any allegations concerning Bob Johnson.

Lastly, the Court **DIRECTS** the Parties to confer and submit a proposed consolidated pretrial order in accordance with Local Rule 16.4 within thirty (30) days from the date of entry of this order.  <u>See</u> LR 16.4, NDGa.

**SO ORDERED**, this 7th day of July, 2021.

<u>Eleanor L. Ross</u>
Eleanor L. Ross
United States District Judge
Northern District of Georgia